UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                            :

UNITED STATES OF AMERICA,              :

                                            :                  25-CR-00534 (JAV)

            -v-                         :

                                            :                <u>OPINION AND ORDER</u>

HIBERTO LEAL,                        :

                                        :

                     Defendant.        :

                                            :
------------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Defendant Hiberto Leal ("Leal") moves to suppress the firearm seized by, and post-arrest statements made to, New York City Police Department ("NYPD") officers during a traffic stop on October 18, 2025.  ECF No. 27 ("Def. Mem.") at 1. Leal first argues that the officers did not have the particularized reasonable suspicion that he was armed and dangerous necessary for a limited frisk, pursuant to *Terry v. Ohio,* 392 U.S. 1 (1968).  *Id.* at 5.  Second, he contends that the search exceeded the permissible scope of a *Terry* frisk.  *Id.* at 8.  For the reasons that follow, the motion to suppress is **DENIED**.

## BACKGROUND

The facts in this case, which are derived from the indictment, arrest report, and the NYPD officers' body worn camera ("BWC") footage from the evening of the incident, are largely undisputed for purposes of this motion.  On October 18, 2025, Officer Richard Santana, Officer Edward Gaston, and Sergeant Dwight Powell (collectively, the "NYPD officers") were driving together in a police vehicle in the

Bronx.  *See* ECF No. 27-1 ("Compl. Report") at 2-3, 5; ECF No. 27-2 ("Santana BWC") at 21:37:12; ECF No. 27-3 ("Gaston BWC") at 21:37:21; ECF No. 27-4 ("Powell BWC") at 21:37:17.  At the southeast corner of Laconia Avenue and East 229th Street, at approximately 9:37 P.M., the officers saw Leal drive through a red light.  ECF No. 27-5 ("Santana Decl.") at 1; *see* Compl. Report at 2-3.  Officer Gaston also determined prior to the stop that the vehicle's license plate was registered to another car.  *See* Gaston BWC at 21:37:21-38:07.  At 9:38 P.M., the officers pulled over Leal to conduct a traffic stop.  Santana BWC at 21:38:10.  Leal stepped out of his vehicle before any of the officers had exited the police vehicle.  *Id.*  Officer Santana stepped out first, with Officer Gaston and Sergeant Powell close behind. *Id.*; Gaston BWC at 21:38:11; Powell BWC at 21:38:13.

Officer Santana approached Leal, who had his hands up, and instructed Leal to "just leave your hands up."  Santana BWC at 21:38:14-16.  As Officer Santana approached, he noticed a clip on Leal's waistband and asked, "You got a knife?"  *Id.* at 21:38:16-18.  Leal responded affirmatively, lowering his right hand toward the knife.  *Id.*  Officer Santana was within arm's reach at the moment Leal lowered his hand.  *Id.*

It is disputed by the parties whether Leal gestured to or intended to reach for and grab the knife.  Def. Mem. at 4.  In the BWC footage, Leal's right hand is shown moving to his waist such that it covers the camera's view of the knife.  Santana BWC at 21:38:18.  At that moment, his hand appears to either touch the knife or hover mere inches away from it.  *Id.*

Officer Santana moved Leal's hand away from his waistband and said, "Don't touch." *Id.* at 21:38:18-21:38:20. Officer Santana retrieved the knife as Officer Gaston and Sergeant Powell reached Leal. *Id.* at 21:38:20-21:38:22; Gaston BWC at 21:38:20-21:38:22.

Within seconds, Sergeant Powell began to pat down Leal's outer clothing, with Officer Gaston joining shortly after, patting down the front of Leal's jacket. Santana BWC at 21:38:23-39; Gaston BWC at 21:38:23-39; Powell BWC at 21:38:23-39. Sergeant Powell asked Leal, "You got anything else on you?" to which Leal said no, later adding "I have nothing on me." Santana BWC at 21:38:24-29.

When Officer Gaston placed his hand on the outside of the left front side of Leal's jacket, he immediately said, "ninety-two." Powell BWC at 21:38:34. Leal was handcuffed and placed under arrest. Santana BWC at 21:38:39-58. Sergeant Powell then unzipped and reached into the left front side of Leal's jacket and pulled out a loaded SCCY CPX-2 9 millimeter semi-automatic pistol. *Id.* at 21:39:01-12; Santana Decl. at 1; Compl. Report at 3.

Leal was charged with criminal possession of a weapon in the second degree in New York state court. Santana Decl. at 1; Compl. Report at 2.

## DISCUSSION

### A.    Evidentiary Hearing

"A court must ordinarily hold an evidentiary hearing on a motion to suppress if the moving papers are sufficiently definite, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search

are in question." *United States v. Durand*, 767 F. App'x 83, 87 (2d Cir. 2019) (summary order) (cleaned up). "A defendant seeking a hearing on a suppression motion bears the burden of showing the existence of disputed issues of material fact." *United States v. Martinez*, 992 F. Supp. 2d 322, 326 (S.D.N.Y. 2014) (citation omitted). To meet that burden, the defendant must submit an affidavit from someone with personal knowledge of the underlying facts that is "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Parrilla*, 13-CR-360 (AJN), 2014 WL 1621487, at *4 (S.D.N.Y. Apr. 22, 2014) (citation omitted). "[T]here is no basis for an evidentiary hearing" where the parties agree on the facts but instead disagree on the legal implications of those facts. *Martinez*, 992 F. Supp. 2d at 326.

Defendant has not submitted a declaration of his own in support of his suppression motion. Instead, he primarily relies upon the same BWC footage of the *Terry* stop as does the Government. *See* Def. Mem. at 3-5; ECF No. 32 ("Opp'n") at 1-4. Accordingly, this is not a case where there is a disputed issue of fact as to what occurred, but only a question as to whether under the undisputed facts, the frisk was lawful. Because the BWC establishes the nature of the search and subsequent arrest, an evidentiary hearing on Leal's motion to suppress is unnecessary.

**B.    *Terry* Stops and Searches**

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

4

and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. CONST., amend. IV. "[W]hile 'reasonableness' generally requires procurement of a judicial warrant based on probable cause, neither a warrant nor probable cause is an indispensable component of reasonableness in every circumstance." *United States v. Bailey*, 743 F.3d 322, 331 (2d Cir. 2014) (cleaned up). The "government interests in effective crime prevention and detection, as well as in officer and public safety while pursuing criminal investigations, could make it constitutionally reasonable in appropriate circumstances and in an appropriate manner temporarily to detain a person and to pat him down for weapons even though there is no probable cause to make an arrest." *Id.* at 331-32 (cleaned up). Accordingly, law enforcement officers may, in circumstances where "advance judicial approval" is impracticable, conduct brief investigative stops of people, provided they have reasonable suspicion that criminal activity is afoot. *Terry*, 392 U.S. at 20, 30; *accord Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

During a *Terry* stop, to protect themselves and the public from further danger, law enforcement officers may "proceed from a stop to a frisk" if they reasonably suspect the person stopped is armed and dangerous. *United States v. Simmons*, 560 F.3d 98, 108 (2d Cir. 2009) (quoting *Arizona v. Johnson*, 555 U.S. 323, 326 (2009)). "The scope of the search must be strictly tied to and justified by the circumstances which rendered its initiation permissible." *Terry*, 392 U.S. at 19 (cleaned up).

Thus, a *Terry* "stop and frisk" has three prongs of analysis. First, the officers

must have reasonable suspicion that criminal activity is afoot to lawfully detain and question a person; that is, the stop must be "justified at its inception." *Id.* at 20; *see id.* at 28. Second, even if the initial stop is justified, officers must reasonably suspect that same person to be armed and dangerous before they may conduct an investigative search. *See id.* at 29. Third, the scope of the search "must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer," such as patting the outer clothing of a suspect, only going further if an instrument is felt. *Id.*; *see also United States v. Casado,* 303 F.3d 440, 449 (2d Cir. 2002) (holding that an officer who invaded a suspect's privacy by reaching inside his pockets without first conducting a pat-down search to determine if a weapon could be felt had violated the Fourth Amendment).

## C.    Reasonable Suspicion Warranting a *Terry* Frisk

In the instant case, there is no dispute that the NYPD officers had grounds to conduct a *Terry* stop. The officers, driving through the Bronx, directly observed Leal drive through a red light, a traffic violation. N.Y. Veh. & Traf. Law § 1111(d). A traffic stop based on reasonable suspicion of a traffic violation is justified in its inception. *United States v. Stewart*, 551 F.3d 187, 192 (2d Cir. 2009). Consequently, the question presented is whether the officers' subsequent interaction with Leal created a reasonable suspicion that Leal was armed and dangerous, such that an investigative search was warranted.

Reasonable suspicion is an objective threshold below probable cause, but greater than a simple "hunch." *United States v. Singletary*, 798 F.3d 55, 59-60 (2d

Cir. 2015).  Reasonable suspicion that an individual may be armed and dangerous relies on an officer's ability to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *Terry*, 392 U.S. at 20.  To determine whether an officer "has an objective basis for his conduct, the Court must view the totality of the circumstances through the eyes of a reasonable and cautious officer on the scene, whose insights are necessarily guided by the officer's experience and training, as well as commonsense judgments and inferences about human behavior." *United States v. Weaver*, 9 F.4th 129, 140 (2d Cir. 2021) (cleaned up).  The Government bears the burden of proving reasonable suspicion by a preponderance of the evidence.  *See, e.g., United States v. Stewart*, 604 F. Supp. 2d 676, 680 (S.D.N.Y. 2009).

The BWC footage establishes that the NYPD officers had reasonable grounds to suspect that Leal posed a danger to the officers.  Officer Santana's first instruction to Leal was to leave his hands up in the air.  Santana BWC at 21:38:10-16.  Officer Santana then asked Leal if the clip on his waistband was a knife, to which Leal answered affirmatively.  *Id.* at 21:38:16-18.  In that same instant, Leal lowered his hand toward the knife.  *Id.*  Leal argues that his intent was to gesture to the knife.  Def. Mem. at 4.  But regardless of his intent, that does not negate the fact that an objectively reasonable officer could have perceived his movement to the waistband of his pants as threatening, particularly as Leal placed his hand either on the knife or immediately adjacent to the knife while Officer Santana was mere feet away from him.  *United States v. Sharpe*, 470 U.S. 675, 686-87 (1985) (warning

that courts "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing").

Leal makes much of the fact that his pocket knife was not an illegal weapon. Def. Mem. at 5, 7-8. Yet the inquiry is not whether a particular weapon is illegal, but whether officers had a reasonable suspicion that the subject of the *Terry* stop could be armed and dangerous. A knife being lawful to possess makes it no less potentially dangerous to an officer in arm's reach than a lawful firearm in the same scenario, especially where the officer may reasonably perceive the suspect's movement as potentially dangerous to himself or others nearby. *See United States v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008) (reasoning that, because the purpose of a *Terry* frisk is not to discover evidence of a crime but to ensure officers are protected from the threat of violence, "the protective search is permissible whether or not carrying a concealed weapon violates any applicable state law" (cleaned up)).

The cases relied upon by Leal for the proposition that an individual's compliance with police officers negates any reasonable suspicion that the person poses a threat, Def. Mem. at 7-8, are inapposite. For example, in *United States v. Mack*, No. 17-CR-6159 (EAW) (JWF), 2018 WL 8898465, at *6 (W.D.N.Y. Nov. 29, 2018), *report and recommendation adopted*, 2019 WL 2590741 (W.D.N.Y. June 25, 2019), *aff'd*, No. 20-376-CR, 2021 WL 4851391 (2d Cir. Oct. 19, 2021) (summary order), the court found a *Terry* frisk unwarranted where the individual "made no express or implied threats, made no gestures or motions that would cause alarm or

8

suspicion," and was "completely compliant."  *United States v. Mack*, No. 17-CR-6159 (EAW) (JWF), 2018 WL 8898465, at \*6 (W.D.N.Y. Nov. 29, 2018), *report and recommendation adopted*, No. 17-CR-06159 (EAW), 2019 WL 2590741 (W.D.N.Y. June 25, 2019), *aff'd*, No. 20-376-CR, 2021 WL 4851391 (2d Cir. Oct. 19, 2021).  Yet Leal had a visible knife at his waistband, was not compliant with the explicit instructions of the NYPD officers to keep his hands in the air, and he made an alarming gesture by lowering his right hand to the knife.

Accordingly, on these facts, it was objectively reasonable for the officers to be concerned that Leal posed a threat to their safety and to conduct an investigative search for other potential weapons.  *See, e.g.*, *United States v. Bong*, 596 F. App'x 607, 611 (10th Cir. 2014) (holding that, after observing a knife clipped to a jacket pocket, the officer "was entitled to conduct a protective frisk to ensure no other weapons were present"); *United States v. Herrera*, No. 17-CR-10112 (ADB), 2018 WL 1020112, at \*4 (D. Mass. Feb. 22, 2018) ("Defendant's possession of the knife provided reasonable suspicion that Defendant could be armed and dangerous, and justified the pat frisk."); *cf. Weaver*, 9 F.4th at 148 (finding potentially furtive movements and behavior during a police interaction relevant to a reasonable suspicion analysis).

**D.    Scope of *Terry* Frisk**

"If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993).  Leal argues that the manner in

which the NYPD officers frisked his person for weapons exceeded the scope of a permissible frisk under *Terry*.  Def. Mem. at 9-10.  Specifically, he contends that Officer Gaston squeezed and manipulated Leal's clothing in a way that overstepped the "strictly circumscribed" boundaries of a search for weapons under *Terry*.  *Id.*

The Court has closely analyzed the BWC footage and finds that the search did not go further than was necessary to determine if Leal was armed and posed a potential threat to the officers' safety.  The officers used their open hands to feel along the outside of Leal's clothing.  Although Leal characterizes Officer Gaston as "squeezing and grabbing" Leal's clothing, Def. Mem. at 9, the limited flexing of Officer Gaston's fingers as he conducted the frisk was consistent with a lawful attempt to determine whether any object felt under Leal's clothing could constitute a weapon.

Leal cites the Supreme Court's decision in *Minnesota v. Dickerson* for the proposition that a frisk is unreasonable where it involves "squeezing, sliding and otherwise manipulating the contents of [a] defendant's pocket."  Def. Mem. at 9 (quoting *Minnesota*, 508 U.S. at 378).  Yet *Minnesota* does not suggest that an officer, while conducting a pat-down search of outer clothing, cannot manipulate an object felt inside a pocket to determine if it is a weapon.  Rather, in *Minnesota*, the question was whether "the officer's continued exploration of respondent's pocket *after having concluded that it contained no weapon*" was permissible.  *Minnesota*, 508 U.S. at 378 (emphasis added).  In that case, the officer had felt a small lump during a pat-down search, which he then further explored with his fingers to

10

determine if it could be a package of crack cocaine. *Id.* at 369. The Supreme Court determined that the additional examination of the object was unreasonable because it was "unrelated to the sole justification of the search under *Terry*: the protection of the police officer and others nearby." *Id.* at 378 (cleaned up). In contrast, manipulating an object felt during a pat-down search to determine if it could be a weapon, before taking the more intrusive step of reaching inside the pocket, is entirely consistent with the goals of a *Terry* investigatory search. *See, e.g., United States v. Mattarolo*, 209 F.3d 1153, 1158 (9th Cir. 2000) (holding that a "precautionary squeeze is well within the scope of *Terry*" where the officer conducting pat-down search feels an object that could be a potential weapon).

The other authorities cited by Leal in support of his position, Def. Mem. at 9, are not to the contrary. They merely stand for the principle that an officer may not reach directly into a suspect's pocket without first conducting a pat-down search. *See, e.g., Sibron v. New York*, 392 U.S. 40, 65 (1968); *Casado*, 303 F.3d at 447; *United States v. McDow*, 206 F. Supp. 3d 829, 855 (S.D.N.Y. 2016). As discussed, Officer Gaston did perform a pat-down before reaching into Leal's pocket to retrieve the firearm.

### E.    Post Arrest Statements

Leal argues that his post-arrest statements should also be suppressed as fruits of the poisonous tree. Def. Mem. at 1-2. As the Court has determined that the NYPD's search of Leal did not violate his Fourth Amendment rights, there are no grounds to exclude his post-arrest statements.

11

## CONCLUSION

For the reasons set forth above, Leal's motion to suppress, or in the alternative hold an evidentiary hearing, is **DENIED**.

By **May 15, 2026**, the parties should submit a joint letter to the court with a proposed schedule for all pretrial filings, disclosures, and submissions.  This will include, as relevant to this matter, any schedule for expert disclosures, Rule 404(b) disclosures, Daubert motions, the disclosure of 3500 material, the exchange of exhibit and witness lists, demonstratives, and a briefing schedule for motions in limine.  The joint letter should also advise as to the status of the Speedy Trial Act.

The Clerk of Court is directed to terminate the motion at ECF No. 26.

SO ORDERED.

Dated: April 29, 2026
      New York, New York                      JEANNETTE A. VARGAS
                                      United States District Judge